UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

Case No: 6:24-cv-00336-RBD-LHP

MELLISA CRUZ, as Personal Representative
of the Estate of DANIEL P. KNIGHT,

Plaintiff,

v.

CITY OF WINTER PARK, a Florida
municipality; CITY OF WINTER PARK
POLICE CHIEF TIMOTHY VOLKERSON,
in his official capacity; SERGEANT
KENTON TALTON, in his individual
capacity; and OFFICER CRAIG
CAMPBELL, in his individual capacity.

Defendants.

## AMENDED COMPLAINT AND JURY TRIAL DEMAND

Plaintiff MELLISA CRUZ, as Personal Representative of the Estate of Daniel P. Knight, deceased, by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 15(a)(2), hereby files this Amended Complaint and Jury Trial Demand and sues Defendants CITY OF WINTER PARK, a Florida municipality, CITY OF WINTER PARK POLICE CHIEF TIMOTHY VOLKERSON, in his official capacity, SERGEANT KENTON TALTON, in his individual capacity, and OFFICER CRAIG CAMPBELL, in his individual capacity, and alleges:

## INTRODUCTION

1. This action involves the violation of Mr. Daniel P. Knight's federal civil rights by Defendants acting under color of state law. It contains state wrongful death causes of action pursuant to this Court's concurrent and pendant jurisdiction. The aggregate amount of damages

1

claimed by Plaintiff against all Defendants is in excess of seventy-five thousand dollars ($75,000.00).

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983, § 1988, the Fourth and Fourteenth Amendments to the United States Constitution, and the Florida Wrongful Death Act, Florida Statutes § 768.16 – 768.28.

3. Plaintiff's claims for relief are predicated on 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured to Plaintiff by the Constitution and laws of the United States and by 42 U.S.C. § 1988 which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

4. Venue is appropriate in this Court as the acts alleged to have been committed by Defendants against Plaintiff's decedent occurred wholly within Orange County, Florida.

5. A written notice of Plaintiff's claims asserted was submitted to the Winter Park Police Department, Florida's Department of Financial Services, Office of the State Attorney, Ninth Judicial Circuit, the City of Winter Park, and the Florida Department of Law Enforcement on or about April 20, 2022, a copy of which is attached hereto as Exhibit A. Plaintiff has received no response; therefore, the allegations contained therein are deemed denied by operation of law.

6. The Plaintiff seeks an award for damages for the wrongful death of Mr. Knight, loss of services, protection, care, assistance, companionship, comfort, guidance, counsel, and advice, and for funeral and burial expenses under 42 U.S.C. § 1983 and the Florida Wrongful Death Act. Plaintiff asserts all available claims for damages pursuant to Florida Statute § 46.021

and under Florida's Wrongful Death Act and under federal law, including special damages suffered by The Estate of DANIEL P. KNIGHT and Mr. Knight's statutory survivors.

7. Plaintiff further seeks an award for punitive damages, court costs, and attorney fees in connection with the federal claims.

8. All conditions precedent to bringing this action for recovery of attorney's fees under state and federal law, including those set forth in Fla. Stat. § 768.28(6)(a), have occurred or have been satisfied.

## PARTIES

1. Plaintiff Mellisa Cruz ("Ms. Cruz"), as Personal Representative of the Estate of Daniel P. Knight, is a citizen of the State of Florida residing in Polk County and is otherwise *sui juris*. Ms. Cruz is the parent of Mr. Knight's two minor children. Their children and Mr. Knight's adult child, Denaysia Knight, are survivors as defined under the Florida Wrongful Death Act.

2. At all times material, the decedent, Mr. Daniel P. Knight ("Mr. Knight"), was a resident of Polk County, Florida. Mr. Knight died of injuries from gunshot wounds sustained on or about February 19, 2022, in Winter Park, Florida.

3. Defendant City of Winter Park ("the City") was and is a municipality and/or political subdivision of the State of Florida located in Orange County. At all material times, the City of Winter Park was responsible for its agents and employees of the Winter Park Police Department.

4. Defendant Police Chief Tim Volkerson ("Chief Volkerson") is currently employed by the City of Winter Park as the Chief of Police. He is sued in his official capacity as the chief constitutional officer of the law enforcement agency liable for Mr. Knight's damages. At all material times, Chief Volkerson was in charge of the Winter Park Police Department ("WPPD"),

3

its agents, and its employees, including supervising, training, and establishing policies, customs, and procedures to conform their conduct to the United States Constitution and Florida common law.

5. Defendant Sergeant Kenton Talton ("Sergeant Talton"), at all times material to this action, was employed by WPPD as a police officer. He is sued in his individual capacity.

6. Defendant Officer Craig Campbell ("Officer Campbell"), at all times material to this action, was employed by WPPD as a police officer. He is sued in his individual capacity.

7. At all times material, Defendants were acting under color of state law.

## STATEMENT OF FACTS

8. On or about February 19, 2022, Mr. Knight attended his niece's wedding at the Winter Park Library and Event Center ("WPLEC").

9. WPLEC is owned and operated by the City.

10. The City leased WPLEC to Mr. Knight's relatives for his niece's wedding.

11. The City permitted "preferred caterers" to serve alcohol to the wedding guests, including Mr. Knight.

12. The City maintained control over WPLEC at all times before, during and after the wedding, including the setting of rules governing WPLEC and the enforcement of those rules.

13. The City had a duty to provide safety and security at WPLEC under these circumstances, including the foreseeable overserving of alcohol to wedding patrons, in order to keep the peace and to protect patrons of the wedding, including the decedent, Mr. Knight.

14. This wedding had well over one hundred (100) guests in attendance.

15. The City provided no security measures to ensure the safe and responsible consumption of alcohol by the wedding guests.

16. Knight was overserved alcohol by the caterer approved by the City and, predictably, became intoxicated.

17. The manager of ("WPLEC"), a City employee, Alexandra Pate ("Ms. Pate"), called 9-1-1, claiming Mr. Knight was acting violently, throwing people on the floor, and describing him as "irate."

18. Ms. Pate also described Mr, Knight as "drunk", "intoxicated", and notified 9-1-1 dispatch that "anybody of authority is making him angry."

19. Ms. Pate did not personally observe Mr. Knight posing an actual threat to anyone and was not justified in calling law enforcement to the scene under these circumstances.

20. In response to the call, Officers Talton and Campbell responded to WPLEC where Ms. Pate directed them to where Mr. Knight was standing with his family.

21. Even though Campbell knew that Mr. Knight was mentally compromised due to the overserving of alcohol and that he was reacting poorly to authority, Campbell aggressively approached Mr. Knight as he was standing next to his sister.

22. At this time, Mr. Knight posed no immediate threat to anyone.

23. In response to the Campbell's aggressive approach, Mr. Knight's sister said to the Officers: "He's okay. He's our brother." Both sisters continued to explain that Mr. Knight is their brother, that it is his first wedding, that he has PTSD, that he is not going to hurt anybody, and that he is "just drunk."

24. Mr. Knight was unarmed, and his hands were visible.

25. Due to the darkness in this area, the officers' uniforms were not easily visible to Mr. Knight.

26. Neither Talton nor Campbell identified themselves as police officers to Mr. Knight or anyone else.

27. Upon his arrival, Talton heard family members and witnesses say the following:

   i. "He's okay. He's okay. He's okay."

   ii. "He's our brother. He's our brother. He's our brother."

   iii. "It's his first wedding. It's his first wedding. It's his first wedding."

   iv. "He's got PTSD."

   v. "He's not going to hurt anybody. He's not going to hurt anybody."

   vi. "He doesn't have any weapons. He doesn't have any weapons."

   vii. "Wait. Wait. Wait."

   viii. "He's drunk. He's drunk. He's drunk."

28. Before even making eye contact with Mr. Knight, Talton said to Mr. Knight, "Hey, put your hands behind your back."

29. At this point, there was no objectively reasonable basis to believe the officers or any other individuals were in immediate danger of death or great bodily harm. Yet, Talton and Campbell chose not to de-escalate the situation.

30. Instead, Talton and Campbell continued to try to unlawfully apprehend Mr. Knight, even though they had witnessed no arrestable offenses upon their arrival. Witnesses continued to repeat, "he's just drunk," and plead with the officers to just "hold on."

31. Witnesses on scene continued to try and de-escalate the situation. During this time, Mr. Knight was not in possession of any weapons, nor did he try to grab any of the officer's weapons, thus never placing Talton or Campbell in fear of imminent death or great bodily harm.

32. Campbell then grabbed the arm of Knight's sister who had placed herself in front of Mr. Knight to protect him from inappropriate law enforcement intervention.

33. Upon seeing Campbell grab his sister, Knight tried to defend her by hitting Campbell.

34. After a brief scuffle, Talton escalated the situation when he used unjustifiable deadly force, firing seven (7) rounds into Mr. Knight at point blank range.

35. Talton shot Mr. Knight just one (1) minute and 52 seconds after he arrived on the scene.

36. After shooting Mr. Knight, Talton remained on the scene performing crowd control and interacting with witnesses for more than 12 minutes, even threatening to "lock up" other guests.

37. Witnesses pleaded with the police officers to get an ambulance there as quickly as possible, but it would be more than 12 minutes before the WPPD officers permitted EMS to assist Mr. Knight.

38. During this time, witnesses performed CPR non-stop, noting that Mr. Knight still had a pulse.

39. As a result of his gunshot wounds, Mr. Knight was pronounced dead at the hospital shortly thereafter.

40. The deadly force Talton used on an unarmed citizen known to have been mentally compromised was excessive, unreasonable, and in violation of Federal and State law, as well as accepted police practices within the United States, including the WPPD.

41. Campbell and Talton did not witness Mr. Knight commit any crime or endanger the safety of any person before they began their assault on Mr. Knight and his sister.

42. Under the circumstances, Talton, in violating the rules and orders of the WPPD, unnecessarily placed himself in a confrontational situation with Mr. Knight for no legitimate law enforcement purpose.

43. Talton's conduct violated Mr. Knight's rights under the Fourth and Fourteenth Amendments to the United States Constitution, and Talton was negligent in failing to follow WPPD rules and orders.

44. Talton failed to follow WPPD Standard Operating Procedure #222, Use of Force, De-escalation Techniques, which provides: "Taking actions to stabilize a situation and reduce the immediacy of the threat so that more time, options, and resources are available to resolve the situation. The goal of de-escalation is to gain voluntary compliance of a subject and thereby reduce or eliminate the necessity to use force."

45. Contrary to WPPD policy, Talton did not:

   a. Take action to stabilize the situation.

   b. Take actions to reduce the immediacy of the threat.

   c. Attempt to de-escalate.

46. Throughout the encounter, Talton and Campbell had numerous opportunities to de-escalate the situation and at act responsibly and consistently within clear, reasonable police procedures.

47. A reasonable police officer would have announced themselves as law enforcement, given Mr. Knight time and space, listened to the family members who were clearly not threatened by Mr. Knight and were simply trying to calm everyone.

48. Talton had less lethal alternatives available to him at the time he shot Mr. Knight.

49. Talton did not attempt to de-escalate his interaction with Mr. Knight but rapidly escalated the encounter through his own actions.

50. During Defendant City of Winter Park's official review of the shooting death, WPPD ratified the shooting and affirmed that the actions that led to Mr. Knight's death were in accordance with the policies, practices, and customs of the City of Winter Park.

51. The City of Winter Park Police Department failed to adequately train, supervise, and discipline its officers and subsequently ratified Talton's conduct. As a result, the City of Winter Park is liable for the unlawful death of Mr. Knight.

52. As a result of the shooting, Mr. Knight's children lost the parental relationship with their father. They have suffered and continue to suffer severe emotional distress and harm.

## COUNT I
### Violation of 42 U.S.C. § 1983 Deprivation of Plaintiff's Civil Rights Against Defendant Talton

53. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-52 inclusive, as if fully set forth herein.

54. Talton's actions occurred within the scope of his employment with the WPPD, having occurred within the authorized time and space limits of his duties and to serve Chief Volkerson.

55. This is an action for damages against Talton for the deprivation of Mr. Knight's Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

56. While Talton was acting under color of state and federal law as a police officer, he subjected Mr. Knight to the deprivation of rights and privileges, including the constitutional rights to not be deprived of his life, liberty, and due process of law, and the constitutional right to be free from the excessive force against his person.

57. Talton knew or should have known, and every reasonable law enforcement officer in his position would have concluded that Mr. Knight was intoxicated at the time Talton approached him and that he was not a threat to Talton or anyone else.

58. As a direct and proximate result of the above violations, Mr. Knight suffered physical injury, pain, suffering, emotional distress, disability, and death.

59. Plaintiff Mellisa Cruz claims damages for the constitutional violations to, and wrongful death of, Mr. Knight under 42 U.S.C. § 1983, 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Mellisa Cruz, as Personal Representative of the Estate of Daniel P. Knight, deceased, demands judgment for damages against Talton, as set forth herein and for all damages allowed by law including compensatory damages, special damages and including lost net accumulations punitive damages, costs and attorney's fees and further demands trial by jury on all issues so triable.

**COUNT II: 42 U.S.C. § 1983 Deprivation of Plaintiff's Civil Rights Against Volkerson**

60. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 52 inclusive, as if fully set forth herein.

61. This is an action for damages against Defendant Volkerson, in his official capacity as the Chief of Police for the City of Winter Park, for the deprivation of Mr. Knight's Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

62. At all material times, Chief Volkerson was responsible for WPPD, its agents and employees, including supervising, overseeing, training and establishing policies, customs and procedures to conform their conduct to the United States Constitution and Florida common law.

63. At all times material, Chief Volkerson was responsible for adopting and implementing rules and procedures for the proper and efficient supervision and control of the officers of the WPPD. These duties include, but are not limited to:

   a. To create, adopt, and implement rules, regulations, practices, and procedures toward hiring and retaining law enforcement officers who do not have a propensity towards shooting citizens without cause, including Talton, who lacked sufficient training on the proper use of firearms, the proper response to intoxicated persons, communications skills and decision-making skills.

   b. To create, adopt, and implement rules, regulations, practices, and procedures for the proper and efficient training of law enforcement officers in a way and to an extent necessary to ensure the utilization of a force continuum that prevents any propensity towards violence and excessive force, and which ensures that the least amount of force would be utilized during an encounter with any citizen, including a person with mental illness.

   c. To create, adopt, and implement rules and regulations, practices and procedures for the proper and efficient supervision, control, disciplining, and assignment of law enforcement officers in a way and to an extent necessary to ensure that citizens will not be shot without cause and that unnecessary and wanton pain will not be inflicted on citizens, by the agents and employees of the WPPD.

   d. To implement rules, regulations, policies, practices, and procedures necessary to properly and fully investigate claims by citizens of the extreme and wanton acts of officers and all other employees of the WPPD.

  e. Enforcing the rules, regulations, policies, practices, and procedures when an officer violates the same.

64. Chief Volkerson owed a legal duty to Mr. Knight to exercise reasonable care in hiring, training, and retaining safe and competent employees. Chief Volkerson breached his aforesaid legal duties and said breach(es) caused Mr. Knight's damages.

65. Chief Volkerson, with deliberate indifference, failed to adequately train or otherwise supervise and direct WPPD and its police officers concerning the rights of the citizens they encounter in their duties, such that it is a policy, practice, and customer for the officers, including Talton, to take extreme and reckless actions against the citizens they encounter, including Mr. Knight.

66. The aforementioned actions committed by Talton were proximately caused by the policies, customs, and practices of Chief Volkerson in failing to fulfill his duties as alleged in the previous paragraphs of this Complaint.

67. The aforementioned policies, customs, and practices of Chief Volkerson and the actions of Talton were the legal cause of Mr. Knight's death and Plaintiff's damages.

68. In addition to the policies, customs, and practices referenced above, Chief Volkerson was grossly negligent, reckless, or deliberately indifferent to the health, safety, and welfare of Mr. Knights in that Chief Volkerson expressly acknowledged and assented to the failure to properly train, supervise, control, screen, and review for continued employment, the persona and conduct of Sergeant Talton. As a result, Chief Volkerson had reason to know that Talton would act unlawfully, and he failed to stop Talton's actions.

69. The gross negligence, recklessness, and deliberate indifference of Chief Volkerson identified above was a further underlying cause of the constitutional torts committed by Talton and was the proximate and legal cause of Mr. Knight's injuries and the damages noted above.

WHEREFORE, Plaintiff Mellisa Cruz, as Personal Representative of the Estate of Daniel P. Knight, deceased, demands judgment for damages against Chief Volkerson for all damages allowed by law, including compensatory damages, special damages and including lost net accumulations punitive damages, costs, and reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and any other relief which the Court determines is appropriate.

### COUNT III: State Wrongful Death Action Against Defendant Volkerson

70. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 52 inclusive, as if fully set forth herein.

71. At all times material, Talton was working within the course and scope of his employment as a law enforcement officer for WPPD and Defendant Volkerson.

72. At all times material hereto, Chief Volkerson was charged with the responsibility and duty of adopting, implementing, and enforcing rules and procedures for WPPD deputies to ensure the safety and supervision of the public in the City of Winter Park, including Mr. Knight.

73. Chief Volkerson is liable for Talton's actions during his encounter with Mr. Knight, including:

   a. Despite no immediate threat, Talton made an affirmative election to engage and provoke Mr. Knight.

   b. Talton chose to use his firearm, i.e., deadly force, instead of his taser or pepper spray, i.e., less lethal force.

   c. Upon his arrival, Talton heard family members and witnesses say the following:

      i. "He's okay. He's okay. He's okay."

      ii. He's our brother. He's our brother. He's our brother."

      iii. It's his first wedding. It's his first wedding. It's his first wedding."

      iv. "He's got PTSD."

      v. He's not going to hurt anybody. He's not going to hurt anybody."

      vi. "He doesn't have any weapons. He doesn't have any weapons."

      vii. "Wait. Wait. Wait."

      viii. "He's drunk. He's drunk. He's drunk."

    d. Despite all of these statements from the family pleading with the officers to de-escalate the situation, Sergeant Talton made the affirmative election to fire seven rounds at Mr. Knight.

74. As a direct and proximate result of the negligence of Chief Volkerson, Mr. Knight was killed at his niece's wedding, entitling his estate and survivors to recover all damages allowable under the Florida Wrongful Death Act.

WHEREFORE, Plaintiff Mellisa Cruz, as Personal Representative of the Estate of Daniel P. Knight, deceased, demands judgment for damages against Chief Volkerson for all damages allowable under the Florida Wrongful Death Act including special damages and including lost net accumulations and any other relief the Court deems appropriate. Trial by jury is hereby demanded.

### COUNT IV: State Wrongful Death Action Against Talton

75. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 52 inclusive, as if fully set forth herein.

76. At all times, Talton had a duty to act in a reasonable manner, including while he was on duty as a police officer for the WPPD.

77. Talton breached this duty and exhibited wanton and willful disregard for the safety of Mr. Knight during the encounter on February 19, 2022, when he failed to announce himself as law enforcement, failed to assess the situation, failed to give Mr. Knight time and space, failed to listen to the family members who were clearly not threatened and only trying to calm everyone down, and failed to employ *any* de-escalation Techniques contrary to WPPD Standard Operating Procedure #222.

78. As a direct and proximate result of Talton's negligence, Mr. Knight was killed at his niece's wedding, entitling his estate and survivors to recover all damages allowable under the Florida Wrongful Death Act.

WHEREFORE, Plaintiff Mellisa Cruz, as Personal Representative of the Estate of Daniel P. Knight, deceased, demands judgment for damages against Sergeant Talton for all damages allowable under the Florida Wrongful Death Act special damages, and including lost net accumulations and any other relief the Court deems appropriate.

### COUNT V: State Wrongful Death Action Against Officer Campbell

79. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 52 inclusive, as if fully set forth herein.

80. At all times, Campbell had a duty to act in a reasonable manner, including while he was on duty as a police officer for the WPPD.

81. Campbell breached this duty and exhibited wanton and willful disregard for the safety of Mr. Knight during the encounter on February 19, 2022, when he failed to announce himself as law enforcement, failed to assess the situation, failed to give Mr. Knight time and space, failed to listen to the family members who were clearly not threatened and only trying to calm

everyone down, and failed to employ *any* De-escalation Techniques contrary to WPPD Standard Operating Procedure #222.

82. As a direct and proximate result of Campbell's negligence, Mr. Knight was killed at his niece's wedding, entitling his estate and survivors to recover all damages allowable under the Florida Wrongful Death Act.

WHEREFORE, Plaintiff Mellisa Cruz, as Personal Representative of the Estate of Daniel P. Knight, deceased, demands judgment for damages against Campbell for all damages allowable under the Florida Wrongful Death Act including special damages and including lost net accumulations and any other relief the Court deems appropriate.

**COUNT VI: State Negligence Claim against Defendant City of Winter Park**

83. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 52 inclusive, as if fully set forth herein.

84. At all times material, Winter Park Library and Event Center ("WPLEC") was owned, operated, staffed, and supervised, by the City of Winter Park.

85. Defendant City of Winter Park, owed Plaintiff the duty of safely operating, supervising, staffing, and otherwise monitoring and controlling the activities of its employees and invitees, including but not limited to, ensuring that wedding guests would be reasonably served alcohol.

86. Defendant City of Winter Park, is vicariously liable for the unreasonable acts and omissions of its employees, including but not limited to, Ms. Pate, who unreasonably set in motion the events leading to the death of Mr. Knight.

87. In the alternative, Defendant City of Winter Park, is directly liable for its own negligence in failing to reasonably and adequately staff and secure a wedding of this magnitude

that it knew involved alcohol consumption, and by failing to reasonably and adequately provide security, and supervision of its employees and invitees.

88. As a direct and proximate result of the negligence of Defendant City of Winter Park, Mr. Knight was overserved alcohol, left unsupervised, and was killed at his niece's wedding, entitling his estate and survivors to recover all damages allowable under the law.

**COUNT VII: State Negligence Claim Against Defendant City of Winter Park**
**(Vicarious Liability)**

89. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 52 inclusive, as if fully set forth herein.

90. Under Florida Statute 768.28, the state and its subdivisions are liable for the negligent acts of its employees committed within the scope of their employment under the doctrine of vicarious liability.

91. At all times material, Defendants Sgt. Talton and Officer Campbell, were employees or agents of Defendant City of Winter Park, a state entity subject to the provisions of Florida Statute 768.28.

92. Under the doctrine of vicarious liability, Defendant City of Winter Park is liable for the unreasonable actions of Sgt. Talton and Officer Campbell including the following:

   a. Negligently failing to announce himself as law enforcement;

   b. Negligently failing to assess the situation;

   c. Negligently failing to give Mr. Knight time and space,

   d. Negligently failing to listen to the family members who were clearly not threatened and only trying to calm everyone down; and

   e. Negligently failing to employ *any* De-escalation Techniques contrary to WPPD Standard Operating Procedure #222.

17

93. As a direct and proximate result of the negligence of Sgt. Talton and Officer Campbell's negligent acts, for which Defendant City of Winter Park is vicariously liable, Daniel Knight sustained injuries that resulted in his death.

WHEREFORE, Plaintiff Mellisa Cruz, as Personal Representative of the Estate of Daniel P. Knight, deceased, demands judgment for damages against Volkerson for all damages allowable under the law including special damages and including lost net accumulations and any other relief the Court deems appropriate.

## JURY DEMAND

A demand for a jury trial is hereby made as to all claims.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing was e-filed with the Clerk of Court via the CM/ECF system, which sends an electronic copy to Frank M. Mari, Esq., Roper, Townsend & Sutphen, P.A., 255 S. Orange Avenue, Suite 750, Orlando, FL 32801, fmari@roperpa.com and ihaines@roperpa.com and Joshua B. Walker, Esq., Walker, Revelss, Greninger, PLLC, 189 S Orange Ave., Ste. 1600, Orlando, FL 32801, jwalker@wrg.law and asands@wrg.law, this 16th day of August 2024.

Respectfully submitted,

*/s/ Guy Bennett Rubin*
**Guy Bennett Rubin, Esq.**
Florida Bar No. 691305
**Paul M. Aloise, Jr., Esq.**
Florida Bar No. 127483
RUBIN & RUBIN
2055 S. Kanner Hwy.
Stuart, FL 34994
Telephone: (772) 283-2004
Facsimile: (772) 283-2009
grubin@rubinandrubin.com
paloise@rubinandrubin.com
service@rubinandrubin.com
*Attorneys for Plaintiffs*