UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MELLISA CRUZ,

    Plaintiff,

v.                                            Case No. 6:24-cv-336-RBD-LHP

CITY OF WINTER PARK; TIMOTHY
VOLKERSON; KENTON TALTON;
and CRAIG CAMPBELL,

    Defendants.
_____

## ORDER

Before the Court is the motion to dismiss filed by Defendants Sergeant Kenton Talton and Officer Craig Campbell. (Doc. 42.)

### BACKGROUND[1]

Daniel Knight was shot to death at his niece's wedding by Winter Park police two minutes after they arrived. This suit followed.

In February 2022, Knight was attending a large family wedding at the City's Winter Park Library. (Doc. 38, ¶¶ 8, 14.) The Library had preferred caterers serving alcohol at the wedding, and Knight was overserved. (*Id.* ¶¶ 11, 16.) The Library's

---

[1] The factual allegations in the operative Complaint (Doc. 38) are taken as true for the purpose of this motion and presented in the light most favorable to Plaintiff. *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

manager called the police when she was told Knight was drunk and acting violent. (*Id.* ¶¶ 17–19.) Sergeant Talton and Officer Campbell, two City police officers, arrived. (*Id.* ¶ 20.) Knight's family told the officers he was just drunk, unarmed, had PTSD, and was not hurting anyone. (*Id.* ¶ 27.) Talton told Knight to put his hands behind his back. (*Id.* ¶ 28.) Talton and Campbell did not identify themselves as police officers, and the area was dark so their uniforms were not easily visible. (*Id.* ¶¶ 25–26.) Knight's sister stood in front of him to shield him. (*Id.* ¶ 32.) Campbell grabbed her, and Knight hit Campbell to defend his sister. (*Id.* ¶¶ 32–33.) Talton and Knight then engaged in a "brief scuffle," and Talton shot Knight seven times at point-blank range. (*Id.* ¶ 34.) The whole encounter took under two minutes. (*Id.* ¶ 35.) Talton then held the scene for twelve minutes before permitting paramedics to assist Knight, who died shortly thereafter. (*Id.* ¶¶ 36–39.)

So Plaintiff, the mother of Knight's children, brought the following claims on behalf of his family: (1) a 42 U.S.C. § 1983 excessive force claim against Talton; (2) a § 1983 negligent hiring, training, and supervision claim against the City's Chief of Police Timothy Volkerson; (3) a wrongful death claim against the Chief; (4) a wrongful death claim against Talton; (5) a wrongful death claim against Campbell; (6) a negligence claim against the City for vicarious liability for the actions of City staff; and (7) a negligence claim against the City for vicarious liability for the actions of Talton and Campbell. (Doc. 38.) The City and the Chief

answered the Complaint. (Doc. 41.) Talton and Campbell filed the instant motion to dismiss. (Doc. 42.) Plaintiff opposed. (Doc. 43.) The matter is ripe.

## STANDARDS

A plaintiff must plead "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). On a motion to dismiss a claim, a court limits its consideration to "the well-pleaded factual allegations." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). The factual allegations must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court must accept the factual allegations as true and construe them "in the light most favorable" to the plaintiff. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). But this "tenet . . . is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). So a pleading that offers mere "labels and conclusions" is insufficient. *Twombly*, 550 U.S. at 555.

## ANALYSIS

### I. Fourteenth Amendment

Plaintiff's § 1983 claims are brought under both the Fourth and the Fourteenth Amendments. (Doc. 38, ¶¶ 55, 61.) Talton first seeks dismissal of the Fourteenth Amendment claim against him in Count I, arguing that claims asserting excessive force during a seizure must be analyzed under the Fourth Amendment's reasonableness standard, rather than a substantive due

process standard under the Fourteenth Amendment. (Doc. 42, pp. 4–5.) This is true, and Plaintiff does not contest it. (*See* Doc. 43); *Graham v. Connor*, 490 U.S. 386, 395–97 (1989) ("*[A]ll* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."). So the Court will analyze the § 1983 claims under the Fourth Amendment objective reasonableness standard, and this portion of Count I is due to be dismissed to the extent it relies on Fourteenth Amendment substantive due process. *See Vasconez v. Hansell*, 871 F. Supp. 2d 1339, 1342 (M.D. Fla. 2012) (Presnell, J.).

## II. Qualified Immunity

Next, Talton asserts qualified immunity on the remainder of the § 1983 claim against him in Count I, arguing that his use of deadly force was objectively reasonable under the circumstances. (Doc. 42, pp. 5–11.)

Government officials sued for violations of constitutional rights under § 1983 may invoke qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The inquiry has two steps: first, the government official must show he was engaged in a discretionary function—which Plaintiff does not contest (*see* Doc. 43, p. 13). *See Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264

(11th Cir. 2004). Second, the plaintiff must show: (1) the official violated his constitutional right; and (2) the right was clearly established at the time of the violation. *Id.* Courts may consider these two questions in either order. *See Pearson v. Callahan*, 555 U.S. 223, 232–42 (2009).

The Court takes up the latter first. To be "clearly established," the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The case law has long clearly established that "deadly force cannot be employed in a situation that requires less-than-lethal force." *Mercado v. City of Orlando*, 407 F.3d 1152, 1159–60 (11th Cir. 2005) (citing *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)). And even if there is no case law precisely on point, shooting an unarmed man seven times at point-blank range within just a few minutes of arriving on scene, without first trying to de-escalate, investigate, or use less-than-deadly force, is also "so far beyond the hazy border between excessive and acceptable force that the official had to know he was violating the Constitution even without caselaw on point." *See id.* at 1160; *cf. Salvato v. Miley*, 790 F.3d 1286, 1290–94 (11th Cir. 2015) (clearly established that shooting unarmed retreating suspect who scuffled with officers during arrest for disorderly conduct was

5

excessive).[2] *See generally Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (even when deciding clearly established prong, court must draw factual inferences in favor of plaintiff).

So the Court turns to whether Talton violated Knight's right to be free from the use of deadly force during this encounter. The question is what level of force is "objectively reasonable" under the circumstances. *Graham*, 490 U.S. at 397. The force used must be proportional to the need, considering "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Mercado*, 407 F.3d at 1157. "[E]ven in cases where a suspect engages in a struggle, police officers are still required to properly assess whether the suspect is a genuine threat based on the information available to them at the time." *Ayers v. Harrison*, 650 F. App'x 709, 715 (11th Cir. 2016).

Here, Knight's family begged the officers to slow down and pleaded that he was not hurting anyone, but Talton shot him less than two minutes after arriving on the scene. (*See* Doc. 38, ¶¶ 23, 27, 30, 35.) Yet the initial crime for which he was approached was relatively insignificant—at best, drunk and disorderly. (*Id.* ¶¶ 19,

---

[2] Talton's reliance on *Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1291–92 (11th Cir. 2009), misses the mark. That case held it was not clearly established (at that point in time) that hog-tying a suspect was unlawful. But Talton did not hog-tie Knight—he shot him. So the cases about shooting an unarmed suspect, like *Salvato*, are much more analogous.

6

22, 29.) He posed little serious danger to two armed police because he was unarmed and drunk. (*Id.* ¶ 27.) He was not a flight risk given that he was surrounded by family. (*Id.* ¶¶ 29–31.) And though he did hit the other officer, that must be placed in the context that the police did not announce themselves and he was defending his sister from an apparent stranger who grabbed her. (*Id.* ¶¶ 25–26, 32–34.)

Taking these allegations as true and construing them in the light most favorable to Knight, Plaintiff has sufficiently pled that the use of deadly force was not objectively reasonable under these circumstances. *See Salvato*, 790 F.3d at 1293–94 (initial crime of disorderly conduct was not severe, suspect was unarmed and though he hit officer he backed away, and officer did not issue warning before shooting, so deadly force was unreasonable); *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1497, 1502 (11th Cir. 1985), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986), *and abrogated on other grounds by Graham*, 490 U.S. at 394 (finding "little difficulty" in concluding that officer who shot and killed drunk unarmed suspect during scuffle, even though he was resisting arrest, engaged in excessive force); *Ayers*, 650 F. App'x at 712 (deadly force not reasonable where suspect tried to evade officers because they did not identify themselves as cops). *See generally Jackson v. City of Atlanta*, 97 F.4th 1343, 1350 (11th Cir. 2024) ("To defeat a qualified immunity defense on a motion to dismiss, the operative complaint

must plausibly plead that the defendant violated the plaintiff's federal rights and those rights were clearly established . . . accepting the facts alleged in the complaint as true and drawing all reasonable inferences in the plaintiff's favor."). So Talton is not entitled to qualified immunity at this stage.

### III. Sovereign Immunity

Finally, Plaintiff asserts wrongful death claims against both Talton and Campbell in Counts IV and V, alleging they acted in wanton and willful disregard for Knight's safety. (Doc. 38, ¶¶ 77, 81.) Talton and Campbell move to dismiss these claims on sovereign immunity grounds, arguing the Complaint fails to sufficiently plead the requisite intent to overcome it. (Doc. 42, pp. 12–15.) Plaintiff counters that the officers' failure to de-escalate[3] plus their lack of probable cause to arrest Knight satisfies the intent requirement. (Doc. 43, pp. 11–12.)

Florida's sovereign immunity law provides that a state officer "may not be held personally liable in tort or named as a party defendant" for injuries resulting from acts within the scope of his employment, unless he "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). So "for a plaintiff to

---

[3] Specifically, the Complaint alleges the officers "failed to announce [themselves] as law enforcement, failed to assess the situation, failed to give Mr. Knight time and space, failed to listen to the family members who were clearly not threatened . . . , and failed to employ *any* [d]e-escalation [t]echniques contrary to WPPD Standard Operating Procedure #222." (Doc. 38, ¶¶ 77, 81.)

8

succeed in piercing the statutory immunity defense, he must make a good faith allegation in the complaint that the . . . official either acted outside the scope of his employment or in bad faith." *Eiras v. Florida*, 239 F. Supp. 3d 1331, 1343 (M.D. Fla. 2017) (Howard, J.) (cleaned up) (applying Florida law). Bad faith requires actual malice, as opposed to legal malice—meaning it cannot be inferred from the absence of probable cause alone. *See id.* at 1345 (distinguishing older case law inferring legal malice from the absence of probable cause in the malicious prosecution context). "Generally, courts are reluctant to strip officers of their [sovereign] immunity," so threadbare recitals of intent are insufficient. *Id.* at 1344. That said, the question of intent for sovereign immunity purposes often presents fact issues unresolvable prior to trial. *See Butler v. Gualtieri*, 41 F.4th 1329, 1337 (11th Cir. 2022) (applying Florida law).

Here, Plaintiff's over-reliance on the officers' purported lack of probable cause does not help her because that alone is not enough to establish bad faith. (Doc. 43, pp. 11–12); *see Eiras*, 239 F. Supp. 3d at 1345. So setting probable cause aside, we are left with, in essence, the allegations that Campbell "aggressively approached" Knight and grabbed his sister and then Talton shot him. (Doc. 38, ¶¶ 21–35.) Taking the allegations against Talton as true, showing up at a wedding and shooting an unarmed man seven times point-blank just two minutes later is excessive enough that it sufficiently pleads the requisite ill intent. (*Id.* ¶¶ 31, 34,

9

35); *see Sierra v. Associated Marine Institutes, Inc.*, 850 So. 2d 582, 592–93 (Fla. 2d DCA 2003) (conduct "virtually certain to cause injury or death necessarily implicates" wanton and willful intent).

But Campbell is a different story. Even construing the scant allegations against him in Plaintiff's favor—Campbell went up to Knight, grabbed his sister's arm, and got punched—they do not add up to bad faith. (Doc. 38, ¶¶ 21, 29, 32, 33, 81); *see Eiras*, 239 F. Supp. 3d at 1345 (threadbare allegations not enough); *Richardson v. City of Pompano Beach*, 511 So. 2d 1121, 1123 (Fla. 4th DCA 1987) (wanton and willful intent requires "conduct much more reprehensible and unacceptable than mere intentional conduct"). Campbell did not shoot Knight, nor is there any suggestion in the Complaint that Campbell intended for Talton to do so or otherwise acted in bad faith. *Cf. Peterson v. Pollack*, 290 So. 3d 102, 111 (Fla. 4th DCA 2020) (drawing inferences from complaint that officer had subjective bad intent when he told another officer to watch his back to protect himself over students during school shooting). So on these facts, Talton is not entitled to sovereign immunity, but Campbell is.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Talton and Campbell's motion to dismiss (Doc. 42) is **GRANTED IN PART AND DENIED IN PART** as follows:

1. The motion is **GRANTED** as to the Fourteenth Amendment claim in Count I, which is **DISMISSED WITH PREJUDICE**.

2. The motion is **DENIED** as to the Fourth Amendment claim in Count I, which proceeds.

3. The motion is **DENIED** as to Count IV, which proceeds.

4. The motion is **GRANTED** as to Count V, which is **DISMISSED WITHOUT PREJUDICE** on sovereign immunity grounds.[4] The Clerk is **DIRECTED** to terminate Defendant Craig Campbell as a party.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on January 27, 2025.

ROY B. DALTON, JR.
United States District Judge

---

[4] *See Moore v. Williams*, No. 3:23-cv-1388, 2024 WL 3965859, at *4 n.10 (M.D. Fla. Aug. 28, 2024) (Howard, J.).